**WO**                                                                                     SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Gabriel Rodriguez, ) | No. CV 06-2826-PCT-JAT (MHB) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| E. Fiser, et al., ) | |
| Defendants. ) | |

Plaintiff Juan Gabriel Rodriguez, confined in the Diamondback Correctional Facility in Watonga, Oklahoma,[1] filed this *pro se* civil rights action against various officials of the Navajo County Sheriff's Office (NCSO) and ADC. Defendant Hadden, who was a Corrections Officer (CO) IV with ADC in 2005, and Defendants Deputy Commander Duran and Sergeant Land, both of the Navajo County Jail (Jail), separately move for summary judgment. (Doc. ##42, 46.) The motions are fully briefed. (Doc. ##51, 55, 57.)[2]

The Court will grant the motions and terminate the case.

///

///

---

[1] Plaintiff remains in the custody of the Arizona Department of Corrections (ADC) although he is incarcerated out-of-state.

[2] Hadden filed no reply.

**I.     Procedural History and Summary of Motions**

In Count I, Plaintiff alleged that Hadden placed Plaintiff in administrative lockdown because Plaintiff filed an inmate letter requesting a response to his other letters about claims of her staff's unprofessional conduct toward Mexican nationals. He asserted that he was not placed on report in any way. (Doc. #1 at 4.) In Count V, Plaintiff alleged that Duran and Land retaliated against him for filing grievances by prohibiting him from filing any further grievances. (Id. at 5C.) On screening of the Complaint under 28 U.S.C. § 1915A(a), the Court ordered Hadden to answer Count I and Duran and Land to answer Count V and dismissed the remaining Defendants and claims. (Doc. #4.)

Hadden moves for summary judgment on the grounds that (1) there is no evidence that an inmate letter was sent to Hadden and (2) Plaintiff was transferred for security reasons. (Doc. #42.) Duran and Land move for summary judgment on the grounds that (1) Plaintiff has no constitutional right to file grievances with either the NCSO or ADC, (2) in fact, Plaintiff was not prohibited from filing grievances and filed additional grievances, (3) Plaintiff cannot show that filing of grievances was a substantial or motivating factor in placing Plaintiff in a maximum security pod, and (4) Plaintiff would only be entitled to nominal damages. (Doc. #46.)

Plaintiff responds to Hadden that (1) he did, in fact, submit a letter to her that was signed by all inmates and it was regarding the disrespectful way that she treated Mexican nationals, (2) it is incorrect that there was a mass grievance signed by several inmates regarding denial of legal phone calls, and (3) he was not disciplined for any alleged inciting of other inmates to riot. Plaintiff responds to Duran and Land that he should never have been placed in a maximum security pod and the evidence shows that he was not permitted to file grievances.

**II.    Legal Standards**

    **A.    Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine

- 2 -

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). On summary judgment, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of [the party's] pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all

justifiable inferences are to be drawn in his favor." Id. at 255. But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

### B. Retaliation

A viable claim of First Amendment retaliation contains five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show that (1) the prison official acted in retaliation for the exercise of a constitutionally-protected right and (2) the action "advanced no legitimate penological interest"). Retaliation claims must be evaluated in light of the concerns of excessive judicial involvement in day-to-day prison management, and courts must therefore "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. Pratt v. Rowland, 65 F3d 802, 807 (9th Cir. 1995.)

Prisoners have a constitutionally-protected right to file grievances and to pursue civil rights litigation without retaliation. Rhodes, 408 F.3d at 567; Hines, 108 F.3d at 267 (prisoner may not be retaliated against for use of grievance system). For example, the Ninth Circuit has held that a prisoner may not be penalized for the contents of a written grievance. Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).

### III. Motion for Summary Judgment

#### A. Count I—Defendant Hadden

#### 1. Parties' Contentions

In support of her motion, Hadden submits her Statement of Facts (Doc. #43, HSOF); NCSO Jail Logs July 7 (id., Ex. A); NCSO movement orders (id., Ex. B); Inmate Letter Response from Hadden (id., Ex. C); ADC Inmate Letter Response from Fiser (id., Ex. D);

- 4 -

NCSO Jail Log July 23 and ADC Inmate Letter Response from Chatt (id., Ex. E); NCSO Grievances (id., Ex. F); and excerpts from contract between ADC and the Jail (id., Ex. F).

Hadden asserts that in July 2005, Plaintiff was a convicted felon in the custody of ADC serving part of his sentence at the Jail. (HSOF ¶ 1.) The Jail is under contract with ADC to provide care and custody to 48 medium/minimum adult male offenders; these inmates are subject to the rules of the Jail. (Id. ¶¶ 2-3.) Although Plaintiff alleges that he turned in an inmate letter to Hadden asking why his previous inmate letters were not answered regarding claims of "her staff['s] unprofessional conduct against all Mexican Amercians," no such letter has been located or supplied by Plaintiff. (Id. ¶ 6.) On July 7, Hadden informed Officer Hernandez that Hadden had received complaints from ADC inmates that Plaintiff was inciting other inmates to riot. (Id. ¶ 7, Ex. A, Jail Log.) Hadden also reported that she received a mass grievance signed by several inmates concerning legal phone calls; the grievance was in handwriting she believed to be Plaintiff's. (HSOF ¶ 8; Ex. A.) Hadden recommended that because Plaintiff was inciting other inmates to riot, he be transferred to a different pod; Plaintiff was transferred on July 7. (HSOF ¶ 9; Ex. A.) Plaintiff was placed in H pod until arrangements were made to place him in SMU or "it was determined 'that he is no longer a threat to security.'" (HSOF ¶ 10; Ex. A.)

On July 26, Hadden responded to Plaintiff's July 19 inmate letter by stating: "As I previously stated to you, you were placed into lockdown based on information received that you were attempting to incite the other inmates to riot." (HSOF ¶ 11; Ex. C.) He was also advised that under the rules of the Jail, he was not acting as a model inmate and that he needed to ensure that his actions were not sending a message that he was causing issues at the Jail. (Id. ¶ 12.) Deputy Warden Fiser responded to Plaintiff's August 23 grievance that he was advised by staff that when Plaintiff was moved out of G pod, "the inmates [there] began to be respectful and not cause problems. Since [Plaintiff has] been moved back into that pod, the issues have now started up again. This advises us that you are causing problems for staff in that pod and getting the other inmates to help." (Id. ¶ 13, Ex. D.) According to the July 23 Jail Log, Plaintiff was also advised that he was giving staff a hard time and he

caused trouble when a third inmate was moved into his cell. (HSOF ¶ 14: Ex. E.) Hadden asserts that Plaintiff submitted many grievances since July 25. (Id. ¶ 15.)

Hadden argues that Plaintiff has not produced the July letter that allegedly prompted retaliation nor has he demonstrated a connection between the letter and the transfer to another pod a few hours later. (Doc. #42 at 6.) She asserts that Plaintiff was transferred for security reasons. (Id. at 6.) She contends that the Court should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for their conduct. Pratt, 65 F3d at 807. In addition, she argues that there is no evidence that her actions would chill or silence a person of "ordinary firmness" because in October 2005 alone, Plaintiff filed at least 25 inmate letters or grievances.

Plaintiff asserts that he did, in fact, turn in a letter regarding Hadden being disrespectful to Mexican American inmates. (Doc. #52, Pl.'s Response to Def.s' Statement of Facts (PSOF) ¶¶ 2, 4.) He was not placed on disciplinary report. (Id. ¶ 2.) The inmate grievance was not concerning calls. (Id. ¶ 4.) He alleges that he was segregated from July 7 to August 8, 2005. (Id.) Plaintiff refers the Court to the contract between ADC and the Jail, arguing that ADC policies and procedures should be followed relative to disciplinary matters. (Id. ¶ 8.) He points to provisions that permit the Jail to place inmates in lock-up if necessary and that ADC should be notified if an inmate is unable to participate in an established program. (Id.) He argues that Defendant has no proof that he incited other inmates and that Hadden's actions would be justified and true if there was any evidence of disciplinary action. (Id. ¶¶ 9, 10.)

He also makes various assertions regarding the contract and double-bunking, that ADC inmates are to be housed separately from Jail inmates, that the new inmate with whom he was housed was charged with rape, and that at ADC there is no mixing of races because there is a feud between Caucasian and Mexican Americans. (Id. ¶¶ 17-26.)

**2. Analysis**

A claim of retaliation requires Plaintiff to demonstrate five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes, 408 F.3d at 567-68.

Hadden offers evidence that Plaintiff was placed in lockdown for security reasons—there were reports from other inmates that Plaintiff was inciting them to riot and she reported this to a Jail officer. (Doc. #43, Ex. A, C.) This action would advance legitimate penological goals, "such as preserving institutional order and discipline" or promoting prison safety and security. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Morrison v. Hall, 261 F.3d 896, 907 (9th Cir. 2001).

Plaintiff asserts that he handed Hadden an inmate letter asking for responses to prior letters about her disrespect to Mexican Americans and unprofessional conduct. Hadden argues that Plaintiff has not produced this letter. Viewing the facts in the light most favorable to Plaintiff, Hadden would have had knowledge of Plaintiff's attempt to file a complaint about her. See Hines, 108 F.3d at 268. According to Plaintiff, he was transferred to segregation shortly thereafter. Retaliatory motive can be inferred from the timing and nature of events. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989). Although Hadden argues that even if there was a letter as described by Plaintiff, "it stretches credulity to believe that it was the cause of a transfer 'hours later,'" her own evidence shows that it was on July 7 that she told Hernandez about the ADC inmates' complaints that Plaintiff was inciting them to riot. It is undisputed that Plaintiff was put into lockdown on that day. This suggests that a transfer can be accomplished quickly. And the Jail Log notes that Hadden reported not only that Plaintiff was inciting other inmates to riot but also that he had helped others to file a mass grievance about missed telephone calls. From this, a jury could infer that Hadden was motivated in part by Plaintiff's protected activity—the filing of grievances. In addition, Plaintiff points out that no Disciplinary Action Report was filed regarding any alleged rule violation for his conduct of inciting other inmates to riot. See Klein v. Helling, 2007 WL 556941, at *12 (D. Nev. 2007). Hadden offers no explanation for this. See id. Thus, Plaintiff provides evidence of the first four elements of his claim.

But the real issue is whether Plaintiff has met his burden on the fifth element of a retaliation claim—to demonstrate a material dispute of fact as to the absence of legitimate correctional goals. Plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." See Pratt, 65 F. 3d at 806. And the Court must "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. Id. at 807.

Although Plaintiff stated in his Complaint that he was put in lockdown for no reason, in his response he does not address the proffered reason—that other inmates complained that he was inciting them to riot—except to ask where the evidence is and complain about the lack of a hearing or disciplinary charge or investigation. (Doc. #51 at 3.) But a rhetorical question is insufficient to meet his burden, and this claim is not about alleged due process violations.[3] Nor does Plaintiff clearly assert that Hadden's allegation is false nor does he provide any evidence of that. Plaintiff never even clearly denies inciting others to riot. In fact, he states that the allegations of misconduct and placing him in segregation, "would be justified and true, if [there] was any proof of [a] disciplinary [charge]" or investigation. (Id.)

In Bruce v. Ylst, the Ninth Circuit reversed the grant of summary judgment where the prisoner's evidence of retaliatory motive included a showing that the evidence relied upon by prison officials to validate him as a gang member had already been found insufficient. Thus, the prisoner's evidence, which with other evidence established retaliatory motive, also called into question the penological justification for the defendants' conduct. Bruce, 351 F.3d at 1288. Likewise, in Klein, the district court denied summary judgment to prison officials where the court found that the officials' justification for the plaintiff's transfer was at issue because the plaintiff, who was investigated for a fraudulent scheme at the prison,

---

[3] Moreover, violations of Jail or ADC rules or procedures do not state federal claims and are not cognizable under §1983. See Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir. 1981).

- 8 -

offered evidence that another inmate, who was just as involved in the scheme, was not transferred. Klein, 2007 WL 556941, at *12.

But unlike Bruce or Klein, Plaintiff offers no evidence to dispute Hadden's proffered, legitimate reason for placing him in segregation. He does not, for example, provide evidence from other inmates that they did not tell Hadden that Plaintiff was inciting them to riot or evidence that he was treated differently than other inmates reported to be inciting others. Plaintiff offers no evidence of a pretextual justification. Because Plaintiff has the burden to prove the absence of a legitimate penological purpose and he has offered no evidence of that, the Court finds that he has not met his burden here. See Rhodes, 408 F.3d at 567-68; see also Hartman v. Moore, 547 U.S. 250, 260 (2006) (causation is but-for; that is, action colored by a bad motive is not a constitutional violation if the action would have been taken anyway). Summary judgment is appropriate when a party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he would have the burden of proof at trial. Celotex Corp., 477 U.S. at 322-23.

### B.   Count V—Defendants Duran and Land

Defendants submit the declaration of Michael Duran (Doc. #47, Ex. A, Duran Decl.); the contract between ADC and the Jail (id., Ex. B); NCSO Main Booking Table (id., Ex. C); Intake and Release (id., Ex. D); Movement order (id., Ex. E); Log Event (id., Ex. F); inmate letters and grievances (id., Ex. G-O); Log Event (id., Ex. P); Movement order (id., Ex. Q); and Log Event (id., Ex. R.)

Plaintiff was at the Navajo County Jail from May 26, 2005 until January 25, 2006. (Doc. #47, Duran's and Land's Statement of Facts (DLSOF) ¶ 5.) On January 12, Officer Hernandez moved Plaintiff to J-pod, a maximum security unit, pending a disciplinary hearing with ADC. (Id. ¶¶ 6-7.) Plaintiff filed several grievances about this placement. (Id. ¶ 8, Ex. A, Duran Decl. ¶ 7; Ex. G, Inmate letters.) Each grievance was processed in accordance with Jail policy. (DLSOF ¶ 9; Duran Decl. ¶ 8.) Plaintiff filed additional grievances on the same issue. (DLSOF ¶ 10; Duran Decl. ¶ 9.) Duran received these grievances, and on January 17, took them to Plaintiff and advised him that the issue had been grieved and responded to three

1  times and no more grievances would be accepted on this issue. (DLSOF ¶ 12; Duran Decl.
2  ¶ 11.) Plaintiff filed an ADC grievance about this the same day. (DLSOF ¶ 13; Ex. H, ADC
3  Inmate letter.) He filed a Jail grievance on January 18 about medical care; a Jail grievance
4  on January 20 about his property box; a Jail grievance on January 20 about legal forms; a Jail
5  grievance on January 23 about his property; a Jail grievance on January 23 about his housing
6  assignment; a Jail grievance on January 23 about a missed call from his attorney; and a Jail
7  grievance on January 23 about refusing food. (DSOF ¶¶ 14-20; Ex. I-O.) Plaintiff refused
8  food beginning on January 21 and was placed on suicide watch on January 24; he was in the
9  same cell from January 12 until he was placed on suicide watch. (DSOF ¶ 23.)

10  Defendants argue that there was no violation of Plaintiff's constitutional right because
11  Plaintiff had no constitutional right to file grievances either with the Jail or ADC. Mann v.
12  Adams, 855 F.2d 639, 640 (9th Cir. 1988). (Doc. #46 at 4.) In addition, they argue that
13  Plaintiff was not deprived of the right to file grievances—Duran only told Plaintiff that he
14  could not file additional grievances on the matter already addressed. (Id. at 4-5.)
15  Furthermore, Plaintiff was not, in fact prohibited from filing grievances because he filed
16  eight grievances in the seven days he remained in NCSO custody. (Id. at 5.) In addition,
17  Plaintiff cannot show that the filing of grievances was a substantial or motivating factor for
18  any adverse action. (Id. at 5-6.) They note that although Plaintiff alleges that Defendants
19  caused Plaintiff to be housed in a bad place and not eat for four days, Plaintiff's housing
20  situation did not change following his January 17 contact with Duran and Land. (Id. at 6.)
21  Finally, they argue that Plaintiff is entitled to only nominal damages if any constitutional
22  violation occurred. (Id.)

23  Plaintiff asserts that he should not have been moved to the "max pod" for cussing
24  because that is only a minor violation and he was not threatening or belligerent. (Doc. #55,
25  Plaintiff's Response to Defendants [Duran and Land] Statement of Facts (P2ndSOF) ¶¶ 4-8.)
26  He was moved to "max pod" and filed grievances that he should be moved back to general
27  population because more than 72 hours had passed. (P2ndSOF ¶ 10.) These grievances were
28  not answered. (Id.) His foul language did not justify his housing. (Id. ¶ 12.) Although

;

Defendants claimed his grievances were frivolous, it all started with Hernandez's response to Plaintiff. (Id. ¶ 13.) Plaintiff points to Defendants' Exhibit C, which states that Officer Winners and Cole told Plaintiff that he can no longer fill out any grievances per Deputy Commander Duran for filling out too many frivolous grievances. (Id. ¶ 14, referring to Doc. #47, Ex. C.) Plaintiff tried to complain about hygiene, clean clothes, writing articles, and having only one set of underwear. (Id. ¶ 16.) Plaintiff went on a hunger strike. (Id. ¶ 17.) Finally, he alleges that the transfer from general population into administrative segregation deprived him of a state-created liberty interest. (Id. ¶ 19.)

In their reply, Defendants argue that Plaintiff's allegation that he was unfairly put into a maximum security pod does not state a claim. (Doc. #57 at 2.) The record belies that he could not file grievances. (Id. at 3.) They assert that it is uncontroverted that the limitation on grievances was to Plaintiff's placement in J-pod. (Id.) As to the log entries that show that officers stated that Plaintiff could no longer file grievances, Defendants argue that there is no evidence that the officers had personal knowledge of Duran's order "rather than having received a garbled version thereof." (Id.)

**2.     Analysis**

First, the scope of this claim does not include Plaintiff's allegedly improper placement in the "max pod"; the claim is for retaliation for filing grievances and the allegedly retaliatory conduct is refusing to allow Plaintiff to file additional grievances; the claim is not about denial of due process. (Doc. #4.) Moreover, because Plaintiff was placed in the "max pod" before the allegedly retaliatory conduct by Duran and Land, the housing conditions are not an issue here.

To have a claim of retaliation, Plaintiff need not establish an independent constitutional interest in filing grievances because the essence of his claim is that Jail officials violated his First Amendment rights by retaliating against him for his protected speech. See Pratt, 65 F.3d at 806. In addition, Plaintiff need not demonstrate that his speech was actually inhibited but only that Defendants intended to interfere with his First Amendment rights. Mendocino Environmental Center v. Mendocino Co., 192 F.3d 1283,

1300 (9th Cir. 1999). The proper inquiry asks "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Id.

Although Defendants claim that it is uncontroverted that Duran gave only a limited order regarding the filing of additional grievances, Plaintiff alleged that Duran said "I will tell my staff not to give you any [grievance forms], if you do I'll state to them to throw them away." (Doc. #1 at 5C.) See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence). And Defendants' own evidence suggests that several officers thought they were not to accept further grievances per Duran's instructions. (Doc. #47, Ex. C; Ex. E.) But the relevant issue is whether Duran's acts would chill or silence a person of ordinary firmness from future First Amendment activities. See Mendocino Environmental Center, 192 F.3d at 1300.

Some retaliatory actions—even if they actually have the effect of chilling a plaintiff's speech—are too trivial or minor to be actionable as violations of the First Amendment. Kennan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002). On the other hand, courts have found that various concrete intimidating tactics or conduct that causes loss of property or imposes pecuniary burdens would chill or silence an ordinary citizen. See Rhodes, 408 F.3d at 568 (confiscation of property may be sufficient); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (eight-month investigation into plaintiffs' activities and threat of subpoena to produce various documents would chill a person of ordinary firmness); Banks v. York, 515 F.Supp. 2d 89, 111 (D. D.C. 2007) (placing inmate in solitary confinement was likely to deter a person of ordinary firmness); Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) (affirming that, although it was a close question, the cost of replacing underwear, shoes and other items and shipping charges to get papers back was a small but sufficient injury where plaintiff alleged that misdelivery of items was in retaliation for speaking with the press) (vacated on other grounds, 520 U.S. 1273 (1997)). Here, Plaintiff alleges only that Duran threatened to tell staff to throw away additional grievances.

Moreover, although Plaintiff complained in his Complaint that he was not allowed to file ADC or Jail kites, Defendants submit evidence that Plaintiff did, in fact, submit several inmate letters and grievances after he spoke with Duran—more than one per day—and that officials responded. Plaintiff does not address this evidence in his response.[4] And although some of the responses to these inmate letters and grievances are not clear, it appears that some were responded to on the merits, even though there are also notations that Plaintiff's grievances had been deemed frivolous. For example, Plaintiff submitted a grievance requesting medication for his migraine and the response notes: "Done." (Id., Ex. I.) Plaintiff also submitted a grievance about his property, and the response was "I don't know where your property is. As for your disc. you will have to refer to your DOC CO. I have been inf. that any further grievances will be deemed frivolous." (Id., Ex. L.) That same day, Plaintiff submitted a grievance about his hunger strike and alleged due process violations; the response was "It is your choice not to eat. Not eating will get you nothing except for suicide watch." (Id. Ex. O.) Thus, although Plaintiff did not receive the responses he wanted, it appears that he was, in fact, permitted to file inmate letters and grievances and they were responded to despite any alleged threats by Duran to have them thrown away. Plaintiff offers no evidence that he was denied the right to appeal from the responses. In addition, Plaintiff's persistence in filing grievances is also some evidence that Duran's actions did not chill Plaintiff's speech. See Smith v. Plati, 258 F. 3d 1167, 1177 (10th Cir. 2001) (plaintiff's persistence in continuing to publish an internet site offers some evidence that attempts and threats to copyright the site would not chill a person of ordinary firmness from continuing to publish).

The Court finds that, viewed in the light most favorable to Plaintiff, Duran's acts would not chill or silence a person of ordinary firmness from future First Amendment activities and that Plaintiff was permitted to file additional grievances after the alleged threat. Summary judgment is appropriate because Plaintiff fails to make a showing sufficient to

---

[4] The documents submitted by Plaintiff do not show that officials refused to respond after the encounter with Duran on January 17.

establish that his First Amendment rights were chilled by Defendants' conduct. See Rhodes, 408 F.3d at 567-68. The Court will grant Duran's and Land's summary judgment motion.

**IT IS ORDERED:**

(1)  The reference to the Magistrate Judge is withdrawn as to Defendant Hadden's Motion for Summary Judgment (Doc. #42) and Defendants Duran's and Land's Motion for Summary Judgment (Doc. #46).

(2)  Defendant Hadden's Motion for Summary Judgment (Doc. #42) is **granted,** and Defendants Duran's and Land's Motion for Summary Judgment (Doc. #46) is **granted**.

(3)  The action is terminated, and the Clerk of court must enter judgment accordingly.

DATED this 5th day of August, 2008.

James A. Teilborg
United States District Judge